IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| PHILLIP TYREE, | : |
| Plaintiff, | : |
| v. | : Action No. 2:16cv697 |
| NANCY A. BERRYHILL,<br>Acting Commissioner,<br>Social Security Administration, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Phillip Tyree's ("Plaintiff") Complaint filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a document, which the undersigned United States Magistrate Judge ("the undersigned") construes as a Motion for Summary Judgment, ECF No. 12, and the Commissioner filed a cross-Motion for Summary Judgment, ECF No. 14, both of which are now ready for recommended disposition. This action was referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the parties' filings, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's

Motion for Summary Judgment, ECF No. 12, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On or about December 7, 2012, Plaintiff initially filed his application for SSI, alleging disability due to diabetes, heart problems, and pain in his shoulder and feet, with an onset date of September 1, 2011. R. at 151-52, 164-65, 167.[1] His application was initially denied on September 9, 2013, and again denied upon reconsideration on February 5, 2014. R. at 67-88. Plaintiff then requested a hearing in front of an administrative law judge, which was conducted on September 29, 2015 before Administrative Law Judge Stewart Goldstein, ("the ALJ") who issued a decision denying Plaintiff's SSI application on October 15, 2015. R. at 32-62, 110-12, 16-31. On December 2, 2015, Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision. R. at 5-15. On October 26, 2016, the Appeals Council denied Plaintiff's request for review because the ALJ's decision was supported by substantial evidence and Plaintiff's claims did not warrant review, making the ALJ's decision the Commissioner's final decision. R. at 1-4.

Having exhausted his administrative remedies, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision on December 12, 2016. ECF No. 3. The Commissioner filed an Answer on February 23, 2017. ECF No. 8. The matter was referred to the undersigned on February 24, 2017. ECF No. 10. On April 10, 2017, Plaintiff filed, *pro se*, a single page document, which the Court construes as a Motion for Summary Judgment, ECF No. 12. The Commissioner filed a Cross-Motion for Summary Judgment, a Memorandum in

---

[1] "R." refers to the certified administrative record that was filed under seal on July 29, 2016, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

Support, and a *Roseboro* notice on May 10, 2017. ECF Nos. 14-16. On May 23, 2017, Plaintiff also filed a Reply in response to the Commissioner's Motion for Summary Judgment. ECF No. 17. The matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff alleged his disability onset date was September 1, 2011. R. at 19. Plaintiff was born on September 7, 1956, and was fifty-six years old when he filed his application for SSI on or about December 7, 2012. R. at 67. On September 29, 2015, Plaintiff was represented by an attorney, Erick Bowman, and testified before the ALJ at the administrative hearing, as did Linda Augins, an impartial vocational expert ("VE"). R. at 19. The record included the following factual background for the ALJ to review:

Between September 1, 2011, Plaintiff's alleged onset of disability date, and December 31, 2014, the date Plaintiff was last insured, Plaintiff visited his primary care physician, Dr. Daniel J. Miranda, M.D. ("Dr. Miranda") at Kempsville Primary Medical Care several times, for several routine visits, as well as for medication refills, new pain prescriptions, poison ivy, and referrals to specialists. R. at 262-73, 284-94.

Plaintiff saw Dr. Douglas Schreiber, M.D., ("Dr. Schreiber") twice in March 2013. R. at 235-36. At the first visit on March 7, 2013, Plaintiff complained of shoulder pain and weakness in his arms. R. at 235. Dr. Schreiber noted that Plaintiff had "poorly controlled" diabetes, but that he had "good" internal and external rotation in both shoulders. Additionally, Dr. Schreiber found that x-rays of Plaintiff's shoulders were normal, and significant only for mild osteoarthritis in the left acromioclavicular joint. R. at 235. Dr. Schreiber prescribed a home exercise program to help with Plaintiff's shoulder flexibility and indicated that Plaintiff may need injections and physical therapy. R. at 235. At a follow-up visit on March 21, 2013, Dr. Schreiber noted that

3

Plaintiff stated he was feeling "better" and demonstrated an "improved range of motion in both shoulders." R. at 236.

Plaintiff was initially seen by Dr. Lakshami G. Goudar, M.D. ("Dr. Goudar") an endocrinologist, on April 25, 2013 for Plaintiff's diabetes, at which time Plaintiff reported that he could not raise his arms above a ninety degree angle, but was able to walk and had no pain in his legs. R. at 255-57. Dr. Goudar recommended that Plaintiff continue with his current medication regimen. R. at 255. In June 2013, Plaintiff returned to Dr. Goudar for a follow-up visit, at which time Plaintiff reported that he felt "better" and Dr. Goudar noted that Plaintiff was "doing well" and that his musculoskeletal examination indicated a normal range of motion. R. at 258-59. Dr. Goudar again recommended that Plaintiff continue with his existing prescription medication regimen. R. at 258.

On May 3, 2013, pursuant to the referral of Dr. Miranda, Plaintiff visited neurologist Dr. Donald E. LaMarche, Jr., M.D. ("Dr. LaMarche") regarding his chief complaint of "progressive shoulder pain," at which time a physical examination revealed a limited range of motion in Plaintiff's upper extremities. R. at 242-44. Dr. LaMarche did not diagnose Plaintiff's shoulder pain, instead recommending an electrodiagnostic study and referral to an arthritis specialist, Dr. Gary Siegel, M.D. ("Dr. Siegel") of Arthritis Consultants of Tidewater. R. at 244, 251. On May 6, 2013, Dr. LaMarche performed an electrodiagnostic study on Plaintiff's upper extremities, and found that "needle electromyography performed on the patient's right and left upper extremities is interestingly entirely normal." R. at 237.

Later that month, on May 24, 2013, Plaintiff presented to Dr. Siegel (for the first and only time) with complaints of shoulder pain and a decreased range of motion in his shoulders. R. at 251-54. Dr. Siegel prescribed Voltaren (a topical gel) and aspirin for pain relief, directed

4

Plaintiff to begin a home exercise program (to be performed twice daily), and suggested that Plaintiff may want to consider physical therapy. R. at 253.

Plaintiff also saw his primary physicians for routine check-ups in March, May, September, and November 2014, R. at 284-87, as well as in March, June, and July 2015, R. at 281-83. On July 28, 2015, Dr. Miranda completed a Physical Capacities Assessment and a Medical Evaluation Report. R. at 278-80. Therein, Dr. Miranda opined that Plaintiff was unable to work full time because of his chronic back, shoulder, and foot pain. R. at 278-80.

Prior to his alleged onset of disability date, Plaintiff's employment background includes substantial retail management and merchandise specialist experience at Ingles Market, Walmart, K-Mart, Super Right Foods (later acquired by Farm Fresh), and most recently, as a divisional manager at the Navy Exchange beginning in 2004, all of which is considered skilled medium work, according to the VE. R. at 39-41, 54-55, 173-80.

Plaintiff is a high school graduate who has completed approximately two years of college education. R. at 36, 39. At the administrative hearing before the ALJ, Plaintiff testified that he lives in Virginia Beach, Virginia with his mother, who is basically bedridden, requires a feeding tube and an oxygen tank, and receives in-home nursing care from an outside agency. R. at 38. Plaintiff receives food stamps, does his own food shopping, laundry, and dishwashing, and attempts to do yard work. R. at 47-50. Plaintiff has a girlfriend and a sister who cook for him, but the majority of his meals consist of cereal, or pre-made food like Pop-tarts, and he usually eats his meals on paper plates. R. at 47-49. Plaintiff testified that he takes a total of nine pills in the morning when he wakes up, including Tylenol and Tramadol for pain, and others for his heart and blood pressure. R. at 42-45. According to Plaintiff, although he takes insulin several times a day, as a well as a shot, his diabetes is not well-controlled and his doctor is concerned,

5

but because of his financial situation and lack of insurance, Plaintiff has been unable to obtain an insulin pump.

      Plaintiff experiences back pain, foot pain, and shoulder pain on a daily basis. R. at 42-43, 46. Plaintiff's foot pain prevents him from sleeping, walking, standing, and climbing stairs. R. at 42-43. Often when walking or climbing stairs, Plaintiff experiences chest pain and shortness of breath and takes nitrous pills to make it stop. R. at 43. Plaintiff estimated that he could probably walk without stopping for twenty to thirty minutes, before either his foot or back pain required him to stop and rest, that he could stand up without moving for a period of about ten minutes, and that he could sit in place for approximately ten to fifteen minutes. R. at 45-47. Plaintiff also testified that because of pain in his shoulders and hands, he struggles to lift and carry any weight in excess of ten to fifteen pounds, to use his hands, and that lifting his arms above his head was painful. R. at 50-52. Plaintiff explained that he previously received treatment for his carpal tunnel and left hand pain with cortisone shots, but his lack of money and insurance rendered him incapable of receiving follow-up care. R. at 52.

      The VE testified that if an individual of Plaintiff's age, education, work experience, limited to light work with the additional limitations of no climbing ladders, rope, scaffolds, occasionally crawling and reaching overhead, and frequently climbing ramps and stairs, stooping, kneeling, and crouching, that individual could perform past skilled light work as an assistant manager and co-manager. R. at 55-56. The VE also testified that for an individual of Plaintiff's age, education, work experience, limited to sedentary work with no climbing ladders, ropes, or scaffolds, no reaching overhead, no crawling, occasionally climbing ramps and stairs, and frequently stooping, kneeling, and crouching, the hypothetical individual could not perform either role as an assistant manager or co-manager. R. at 56. However, under those limitations,

6

the individual could perform sedentary, semi-skilled jobs such as sales slip sorter, check-cashing clerk, and complaint clerk. R. at 57. The VE found that Plaintiff's past employment history included transferable skills such as the ability to direct, control, and plan activities, as well as other supervisory skills, customer services skills, and the ability to make decisions and multi-task. R. at 56-57.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish

disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First the ALJ found that Plaintiff last qualified for disability insurance on December 31, 2014, and that he had not engaged in substantial gainful activity ("SGA") between his alleged onset date of September 1, 2011 and December 31, 2014. R. at 21.

Second, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, peripheral neuropathy, adhesive capsulitis of the shoulders, and mild osteoarthritis of the left acromioclavicular ("AC") joint, and that such impairments limited Plaintiff's ability to perform basic work activities. R. at 21.

The ALJ found that Plaintiff's alleged impairments of hypertension, coronary artery disease ("CAD"), history of coronary artery bypass grafting, carpal tunnel syndrome, and mild to moderate Guyon canal entrapment on nerve conductions studies were not severe "because they did not last for a period of 12 months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous vocational, exertional, or nonexertional limitations." R. at 21. Additionally, the ALJ noted that Plaintiff had not followed up with a cardiologist and the record did not support Plaintiff's complaints of chest pain or his testimony that he takes nitroglycerin five to six times a month for chest pain. R. at 21.

Third, the ALJ determined that evidence failed to show that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P Appendix 1. R. at 21-22. The ALJ explained that based on Listing 1.04, Plaintiff's treatment records did not establish major dysfunction of joints (due to any cause), characterized by gross anatomical deformity and chronic joint pain and stiffness with

signs of limitation of motion or other abnormal motion of the affected joints. R. at 22. *See also* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04). The treatment records also did not include findings on medical imaging to support joint space narrowing, bony destruction, or ankyloses of the affected joints with involvement in a major, peripheral weight bearing joint such as a hip, knee, or ankle, resulting in an inability to ambulate effectively, or involvement of one major peripheral joint in the upper extremity, such as a shoulder, elbow, wrist, or hand, resulting in an inability to perform "fine and gross movements effectively." R. at 22 (citing 20 C.F.R. Part 404, Subpt. P, Appendix I, §§ 1.00(B)(2)(b) and (B)(2)(c)). Additionally, the ALJ found "no evidence of peripheral neuropathies with disorganization of motor function as described in 11.04B, in spite of prescribed treatment." R. at 22. *See* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 11.04B, 11.14.

The ALJ also determined that through December 31, 2014 (the last day Plaintiff was insured), Plaintiff had the "residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) but was subject to the following limitations: lifting ten pounds occasionally, five pounds frequently, sitting eight hours but standing and walking for two hours in an eight hour workday, no climbing ladders, ropes, or scaffolds, no crawling, occasionally climbing stairs and ramps, frequently stooping, kneeling, and crouching, and no overhead reaching. R. at 22.

Fourth, the ALJ determined that because Plaintiff's RFC limited him to sedentary work, Plaintiff was unable to perform past relevant work as a divisional manager, assistant manager, manager, and merchandiser because those positions require a light to medium level of exertion. R. at 25.

Finally, the ALJ found that work existed in significant numbers in the national economy for Plaintiff based on his age, education, ability to speak English, work experience, transferability of acquired skills, and residual functional capacity. R. at 26. These jobs included semi-skilled sedentary positions such as sales slip sorter, check cashing clerk, and complaint clerk. R. at 26.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Pursuant to the Court's March 13, 2017 Order directing Plaintiff to file a Motion for Summary Judgment, ECF No. 11, on April 10, 2017, Plaintiff, acting *pro se*, submitted a letter wherein he contended that he still suffers from the maladies of which he complained administratively. ECF No. 12. As previously noted, the undersigned interprets Plaintiff's submission as a Motion for Summary Judgment asserting that the ALJ's decision is not supported by substantial evidence. *See* ECF No. 12 *passim*. The Commissioner filed a Motion for Summary Judgment and Memorandum of Law in support, contending that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standards in reaching that decision. ECF Nos. 14-15. On May 24, 2017, Plaintiff filed a *pro se* Reply in response to the Commissioner's Motion for Summary Judgment. ECF No. 17. Therein, Plaintiff argued that the ALJ gave improper weight to Plaintiff's treating physician's opinion that he was unable to work; that the ALJ's RFC assessment and the VE's resulting testimony that certain jobs existed in the national economy that Plaintiff could perform were not supported by substantial evidence, and that evidence in the Record supported Plaintiff's contention that he was disabled. ECF No. 17.

For the following reasons, the undersigned finds that the ALJ properly weighed the medical evidence and substantial evidence supported his conclusions. *See Sizemore v. Berryhill*, 878 F.3d 72, 83 (4th Cir. 2017) ("At bottom, we conclude that the ALJ applied the correct legal standards and that his decision is amply supported by substantial evidence.") (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

To the extent that the Court interprets Plaintiff's Motion for Summary Judgment (ECF No. 12) and Reply (ECF No. 17) as challenging the ALJ's finding based on the presence or absence of "substantial evidence," the Court does not find this argument persuasive because the ALJ's finding of Plaintiff's RFC is supported by substantial evidence in the record. The ALJ properly determined that Plaintiff had certain severe impairments, and his RFC determination properly accounted for those. *See* R. at 22-25. The ALJ went to great lengths to examine and consider Plaintiff's medical records, and provided specific page references to the sources underlying his conclusions. *See e.g.,* R. at 25 ("Manipulative limitations were noted for limited lift [sic] and right overhead reaching.") (citing R. at 67-76 ("Exhibit 1A"), R. at 78-87 ("Exhibit 3A")). *See also* R. at 25 ("The established residual functional capacity limits [Plaintiff] to sedentary work."). In fact, to the benefit of Plaintiff, the ALJ specifically gave only partial weight to the opinions of agency medical consultants because "evidence that is more recent establishes somewhat greater limitations." R. at 25 (citing SSR 96-2p).

Furthermore, there is substantial evidence in the record that the severity of Plaintiff's complaints was not entirely supported by the record, and thus, the ALJ's credibility finding was not erroneous. *See* R. at 23 ("After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the allege symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."). For example, although Plaintiff complained of weakness and pain in both shoulders upon presentation to Dr. Schreiber, Dr. Schreiber's notes indicated that a physical examination of Plaintiff revealed "good" internal and external rotation in both shoulders. R. at 235. Additionally, upon Dr. Schreiber's review of x-rays of Plaintiff's shoulders, Dr. Schreiber

determined the findings were normal, with mild osteoarthritis in the left AC joint. R. at 235. Consistent with these findings, Dr. Schreiber prescribed conservative treatment, to include a home exercise program, and at a follow-up visit, Plaintiff reported feeling "better" and exhibited an "improved range of motion in both shoulders." R. at 236. The same was true for the other specialists who examined Plaintiff and to whom Plaintiff returned for a follow-up visit. *See e.g.,* R. at 258-59 (Plaintiff returning to Dr. Goudar for a follow-up visit in June 2013, at which time Plaintiff reported that he felt "better" and Dr. Goudar noted that Plaintiff was "doing well" and that his musculoskeletal examination indicated a normal range of motion"). Additionally, the ALJ found that overall, Plaintiff has not received "the type of medical treatment one would expect for a disabled individual," R. at 24. Of the treatment Plaintiff has received, the ALJ found it to be "essentially routine and/or conservative in nature" and Plaintiff "did not require hospitalization even though he was not compliant with taking his medications as prescribed," but "when he did take medications, they were relatively effective in controlling his symptoms." R. at 24. The Fourth Circuit has explicitly stated that an ALJ may consider the conservative nature of one's treatment as one of the factors the ALJ may consider in determining a claimant's credibility, joining other circuits who have held similarly. *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (noting "we are in accord with several other courts of appeals that have held the same") (citing *Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (noting with approval that the ALJ's credibility determination was based, in part, on finding that the plaintiff's treatment was "essentially routine and/or conservative in nature") (internal quotation marks omitted); *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009) (holding that a history of conservative medical treatment undermines allegations of disabling symptoms); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that evidence of conservative treatment permits the ALJ to

13

discount the claimant's testimony regarding the severity of an impairment); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir.2005) (noting with approval the ALJ's consideration of the nature of plaintiff's treatment as having been "routine and conservative" in making his credibility decision) (internal quotation marks omitted); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000) (same); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that a physician's conservative medical treatment for a particular condition tends to negate a claim of disability)).

Additionally, the ALJ noted that Plaintiff's own testimony recounting his daily activities was not as limited to the extent one would expect given his complaints of disabling symptoms and limitations. R. at 24. Specifically, the ALJ found that "there [was] no evidence of a significant decrease in [Plaintiff's] functioning," especially in light of Plaintiff's stated ability to care for his mother by taking her to the grocery store and to doctors' appointments, getting himself to the doctor's appointments, shopping for himself and doing "the basics" around the house (R. at 206-08), including washing dishes, trimming bushes, and doing laundry (R. at 47-49). R. at 24. Plaintiff laments that he is "not able to do any cardio exercise and [doesn't] expect that will ever change." ECF No. 12 at 1. Nonetheless, the ALJ's determination of Plaintiff's RFC indirectly accounts for that claimed inability by confining Plaintiff's exertional requirement to one of a sedentary nature, with additional limitations beyond even the SSA definition of sedentary work. R. at 22, 26 (citing 20 CFR 404.1567(a)). Notwithstanding the fact that the ALJ specifically categorized Plaintiff's claimed cardiovascular condition as a nonsevere impairment, the positions of sales slip sorter, check-cashing clerk, or complaints clerk require any, if at all, cardiovascular exertion, because they are jobs in the "sedentary" classification.

14

Moreover, the undersigned finds that the ALJ properly discounted Dr. Josue Daniel Miranda's opinion as a treating physician. *See* R. at 25 (affording the opinion of Dr. Miranda "little evidentiary weight") (citing R. at 278; SSR 96-2p). Dr. Miranda opined that Plaintiff could not work because Plaintiff was only able to sit for a total of one hour in an eight hour workday. R. at 25 (citing R. at 278-80). The Court agrees with the ALJ's observation that Dr. Miranda did not support his opinion by reference to any particular medical record, apart from noting that Plaintiff had been under Dr. Miranda's care from 2004 through the day of the July 28, 2015 opinion. R. at 279-80. *See Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given.") (citing 20 C.F.R. § 404.1527(d)(3) (1998)). The ALJ's decision to give Dr. Miranda's opinion "little evidentiary weight" was based on the ALJ's finding that such an opinion was "not consistent with [the] record as [a] whole and is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." R. at 25. This conclusion was not erroneous because, as the Commissioner notes, the ALJ considered all of the medical records, which, as outlined above, support the ALJ's conclusions. *See* ECF No. 15 at 14 (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2) (holding that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). *See also Dunn v. Colvin*, 607 F. App'x 264, 267–68 (4th Cir. 2015) (noting "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.") (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); citing *Craig*, 76 F.3d at 590 (finding

15

that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight")).

Further, the VE's testimony established that given the transferability of Plaintiff's acquired work skills, jobs exist in the national economy for someone with his RFC. The ALJ found that "the jobs listed by the [VE] are so similar to [Plaintiff's] previous work that [Plaintiff] would need to make very little vocational adjustment in terms of tools, work processes, work settings, or the industry." R. at 26. For example, the ALJ noted that Plaintiff "would not have to learn how to operate a cash register although he might have to learn the specifics of a different cashier system than he had used in the past," but that such training would likely take no more than thirty to ninety days. R. at 26. The hypotheticals presented to the VE reflected only the impairments that the ALJ found to be supported by the record and the evidence before him. To the extent Plaintiff's Reply appears to argue that the ALJ erred by failing to adopt the portion of the VE's testimony in response to Plaintiff's counsel's inquiry, that it "would have an impact" on an individual's ability to work as a sales slip sorter, check cashing clerk, or complaint clerk if the individual could only use their hands on an occasional basis, this argument is not persuasive. *See* ECF No. 17 at 2. *See also* R. at 60 (Plaintiff's counsel questioning VE regarding a hypothetical limitation on the individual's use of his hands). In making this argument, "[Plaintiff] overlooks the circumstance that the vocational expert only reached that conclusion upon questioning from [his] counsel, and that [his] counsel posed hypothetical questions that included severe functional limitations not supported by the medical evidence," specifically, the limitation on Plaintiff's use of his hands, which the ALJ found was not a severe impairment. *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015). *See* R. at 21 (finding carpal tunnel syndrome to be a non-severe impairment).

As a result, the ALJ's decision is supported by substantial evidence, and he applied the correct legal standards in reaching that decision.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 12, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record and mail a copy of the following to *pro se* Plaintiff.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 23, 2018